IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AMICA LIFE INSURANCE COMPANY, )
                                )
        Plaintiff/              )
        Counter-defendant,      )
                                )
vs.                             )   No. 05 C 3291
                                )
YOUSEF BARBOR and ENTISSAR S.   )
ALBABOUR,                       )
                                )
        Defendants/             )
        Counter-plaintiffs,     )

## MEMORANDUM OPINION AND ORDER

Plaintiff Amica Life Insurance Company ("Amica") brought suit against defendants Yousef Barbor and Entissar Albarbour, the beneficiaries of an Amica life insurance policy purchased by Faziah Taliaa. Plaintiff seeks a declaratory judgment decreeing that Taliaa's birth date, for the purposes of the insurance policy, was 1926, and that Amica has fulfilled its obligations under the policy. Defendants brought a counterclaim against plaintiff, seeking a judgment that plaintiff acted in bad faith by refusing to pay out the policy upon Taliaa's death, and seeking damages and attorneys' fees. Both parties have filed motions for summary judgment on plaintiff's claims. Additionally, plaintiff has filed a motion to strike portions of Barbor's affidavit, submitted in conjunction with defendants' motion for summary judgment and portions of defendants' statement of material facts. For the reasons set forth below, we grant in part plaintiff's motion to strike, deny plaintiff's motion for summary judgment, and grant defendants' motion for summary judgment.

## BACKGROUND

We take the following factual background from the statements submitted by the parties pursuant to Local Rule 56. For purposes of summary judgment motions, we construe the facts in favor of the non-movant. *See* Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Bledsoe v. City of Chicago, 1996 WL 406647, *2 (N.D.Ill.1996) (stating that only reasonable inferences, not all conceivable inferences, will be drawn in favor of non-moving party). Summary judgment is then appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). *See also* Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n of Indianapolis, 806 F.2d 146, 149 (7th Cir.1986). The moving party has the burden to establish the lack of a genuine issue of material fact. Wainwright Bank & Trust Co., 806 F.2d at 149. Upon meeting that burden, the non-moving party must set forth specific facts demonstrating the existence of a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir.1983). The mere existence of some factual dispute will not frustrate an otherwise proper summary judgment motion; only a genuine dispute over a material fact will defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986).

Although summary judgment is only appropriate where there are no genuine issues of material fact, the outcome of this case will be determined by the resolution of a specific fact, namely, Taliaa's birth date. The following facts are undisputed. Plaintiff issued a $100,000 life insurance policy (Policy No. 1-000112015) to Taliaa on March 15, 2000, effective January 2000. The policy was an LT-20 life insurance policy, available only to those between the ages of 15 and 65. The application upon which the policy was issued indicated that Taliaa was born

in 1936, and thus eligible for an LT-20 policy. On May 8, 2000, Policy No. 1-000112015 was cancelled and a new policy (Policy No. 1-000114157) was issued increasing the total policy value to $250,000 and adding Barbor as a beneficiary.[1]

Taliaa died on November 6, 2004, in Syria, and Barbor notified plaintiff of Taliaa's death two days later. Pursuant to Amica's policy and procedure to investigate the circumstances surrounding an insured's death, when an insured dies outside of the United States, Amica hired Worldwide Resources, Inc. to commence the investigation. During the course of the investigation, Worldwide discovered documents showing Taliaa's birth in 1926. Had Taliaa been born in 1926, she would have been 74 when she applied for an LT-20 life insurance policy in 2000, and would have fallen outside its acceptable age range.

Based on the uncovered evidence that Taliaa was born in 1926, Amica informed defendants that it was applying the policy's misstatement of age or sex provision and, therefore, Taliaa's death benefit was $0.[2] Six weeks later, defendants informed plaintiff that the documents showing Taliaa's birth year as 1926 were based on incorrect Syrian documents. In support of their contention that Taliaa was actually born in 1936, defendants presented

---

[1] Plaintiff alleges that Barbor, or another male, was the contact person for Taliaa's life insurance. Specifically, plaintiff asserts that someone using Barbor's e-mail address initially requested a quote for a $100,000 LT-20 life insurance policy; a man completed the application over the telephone on January 7, 2000; Barbor requested a $100,000 increase to the policy on March 17, 2000, and negotiated a $150,000 increase; Barbor requested that he be added as a beneficiary to the policy on April 18, 2000; witnessed such an amendment to the policy on April 20, 2000; called plaintiff on May 26, 2000, to check the status of the policy; and reinstated the policy on February 1, 2002, after it had lapsed. Plaintiff offers support in the form of Amica case history notes and the declaration of an Amica claims officer to support such facts. Although defendants dispute those facts as irrelevant and immaterial to the instant dispute, defendants fail to point to any evidence that such events did not take place as stated by plaintiff. Plaintiff's inclusion of the aforementioned facts try to place Barbor under suspicion for his role in his mother's life insurance policy. Because they are not relevant to the current dispute over Taliaa's birth date, we offer no analysis of them at this point.

[2] The Misstatement of Age or Sex provision reads: "If the age or sex of the Insured is misstated, our liability will be the amount of insurance which the premium paid would have purchased for the correct age and sex."

plaintiff with a court order entered in Syria on August 1, 2004, which amended Taliaa's Syrian Civil Service Record to reflect a birth year of 1936.

Although plaintiff requested that Worldwide investigate the process by which the Syrian order was created, the domestic and international situations in and around Syria allegedly made it impossible for Worldwide to safely verify the Syrian order. And while defendants dispute such a contention and object to the decision to apply the age adjustment provision of Taliaa's policy to limit defendants' recovery, plaintiff held steady and issued a premium refund check, including three percent interest, for a total amount of $8,474.01 to Taliaa's estate.

The parties' disagreement centers on the year of Taliaa's birth, and neither disputes that had Taliaa been born in 1936, plaintiff would be required to pay the full value of the policy. Nor do the parties dispute that documents exist dating Taliaa's birth in 1926 and 1936. The following documents show Taliaa's birth year as 1926:

1. INS Form G-325A, completed by Barbor on behalf of Taliaa on December 8, 1995;
2. Petition for Alien Relative, completed by Barbor on behalf of Taliaa;
3. Barbor's Affidavit of Support on behalf of Taliaa, completed on October 2, 1996;
4. Application for Immigrant Visa and Alien Registration, completed by Taliaa with assistance from defendants on March 3, 1997. Also, attachments included copies of Taliaa's Transcript of Civil Status Record, Extract of Judicial Record, and Extract of Civil Status Record;
5. Medical Examination of Applicants for United States Visa, completed on January 21, 1997, by Mohammad Owais Terakji;
6. Barbor's 2003 response to interrogatory questions in connection with a separate civil rights suit, in which he admitted under oath that his mother was 77 years old; and
7. Police and medical reports from Taliaa's hospital and healthcare stay from August 2001 through December 2001.

Nor is there dispute that the following documents indicate that Taliaa was born in 1936:

1. Taliaa's application for a social security card;[3]

---

[3] Plaintiff disputes that the application was filed in 1997, and disputes that Taliaa herself indicated her birth date, due to her inability to speak or write English.

2.   Taliaa's Illinois identification card, issued December 22, 1999;
3.   A copy of an order issued by the Civil Court of Reconciliation in Salkhad, correcting Taliaa's birth year to read 1936;
4.   A copy of Extract Family Registration Record from the Syrian Arab Republic; and
5.   Taliaa's death certificate from the Syrian Arab Republic.[4]

Although neither party disputes the existence of the documents, each party has an explanation as to why there are documents showing inconsistent dates for Taliaa's birth. Defendants claim that Taliaa's birth date was incorrectly noted in 1958, when she received her initial civil status record, which is the Syrian equivalent of the birth certificate. Thereafter, whenever Taliaa or defendants expected that her 1958 civil status record would be used for identification confirmation, they too stated that her birth date was in 1926. They did so, defendants argue, so as not to hold up or negate her chances for immigration. Because her birth date was always incorrect, defendants contend, Taliaa finally made the trip to Syria to petition the court to change her records to reflect her correct birth date of 1936. The family registration record and the death certificate reflect the changes ordered by the Syrian civil court.

Plaintiff contends, on the other hand, that documents reflecting Taliaa's birth date of 1936 are inadmissible because this court should not grant comity to the Syrian court order or any document flowing from that order. Plaintiff asserts that Syrian courts are notoriously corrupt and do not reflect a full and fair hearing on the merits of the case.

Before we can analyze either party's motion for summary judgment, we must assess plaintiff's motion to strike portions of Barbor's affidavit and related paragraphs of defendants' statement of material facts. Plaintiff correctly notes that Federal Rule of Civil Procedure 56(e) requires affidavits submitted with a summary judgment motion "shall be

---

[4]While plaintiff does not dispute that the documents from Syria show Taliaa's birth year as 1936, plaintiff does dispute the authenticity, fairness, and admissibility of such documents.

made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated [t]herein."

To determine whether plaintiff's motion to strike has merit, we address Barbor's affidavit testimony by reviewing each contested paragraph. We deny plaintiff's motion to strike with respect to paragraph 1. The existence and residence of Barbor's mother are within his personal knowledge. We grant, in part, plaintiff's motion with respect to paragraph 2. Barbor may testify as to his knowledge that his mother went to Syria; the events that transpired in Syria, however, are beyond his personal knowledge. *See, e.g.*, Abioye v. Sundstrand Corp., 164 F.3d 364, 368 (7th Cir.1998). The documentary evidence submitted with defendants' briefs, however, is evidence of her conduct in petitioning the Syrian court for correction of her birth date. The same is true for paragraphs 10 and 11. Paragraph 3 is not stricken, as long as Barbor has seen the documents showing the discrepancy in age. Paragraph 4 will be stricken, but the documentary evidence may be introduced and speak for itself. Barbor does not have personal knowledge of paragraph 5, and it is therefore stricken. Yousif M. Abobaker's affidavit, attached to defendants' reply in support of its motion for summary judgment and response in opposition to plaintiff's motion for summary judgment, introduces similar testimony and has not been contested by plaintiffs.

With regard to paragraph 6, Barbor can testify as to the date of his marriage and the existence of his siblings. Other evidentiary material must be submitted to show additional errors. With regard to paragraph 7, Barbor may testify as to his use of the civil status record in assisting his mother with creating documentary evidence of her birth, such as her immigration records. Additionally, the immigration records and other documentary evidence can speak for themselves. Paragraph 8 is acceptable as long as it refers to Barbor's own

thought process with respect to his mother's records. Plaintiff suggests that Barbor's affidavit must be stricken because it conflicts with earlier sworn testimony. Where, however, as here, the affiant explains the discrepancy, we must allow such evidence. *See* Stagman v. Ryan, 176 F.3d 986, 995-96 (7th Cir.1999) ("Under the Federal Rules of Evidence, a witness who is not an expert may testify about opinions or inferences formed that are based on the witness's perception and 'helpful to a clear understanding of the witness' testimony or the determination of a fact in issue'") (citing FED. R. EVID. 701). *But see* Babrocky v. Jewel Food Co., 773 F.2d 857, 861 (7th Cir.1985) ("The situation is quite different when a plaintiff has directly contradicted her own earlier statements, without explaining the contradiction or attempting to resolve the disparity"). With respect to paragraph 9, although Barbor may not have personal knowledge of such documentary evidence, it has been entered into the record and therefore the affidavit testimony is unnecessary.

With respect to paragraph 12, Barbor can testify to his own travels and the time at which his mother fell ill. The treating physician or medical records would have to be entered for the remainder of the paragraph. *See* Stagman, 176 F.3d at 997 (hearsay is inadmissible). Finally, with respect to paragraph 15, Barbor can testify to the date on which he furnished the insurance company with the Syrian court order. Whether or not the issue was formally resolved is now a question for this court, and is a legal conclusion beyond the scope of acceptable testimony from Barbor. The records, however, are admissible evidence and can be used to determine the ultimate question of fact.

For the most part, we disagree with plaintiff's assertion that the striking of the paragraphs in Barbor's testimony requires the striking of defendants' statement of material facts. Paragraphs 8, 9, 10, 11, 12, 13, 15, 19 and 22, in defendants' statement of material facts,

are supported by documentary or testimonial evidence in the summary judgment record and therefore will not be completely stricken. They will be stricken, however, where the paragraphs make legal conclusions (see paragraphs 9, 16 and 22). Paragraph 17 – with no supporting evidence outside of Barbor's stricken testimony – is also stricken.

The parties spend a considerable amount of time and energy arguing over whether the documentary evidence, particularly the Syrian documents, are admissible. Plaintiff suggests that the issue is one of comity and not of admissibility. Although we discuss plaintiff's comity concerns below, we find that under Federal Rules of Evidence 803(8) and 902(3), the civil record and death certificate from Syria are admissible. The documents are an exception to the hearsay rule under 803(8), and properly authenticated under 902(3).[5] The parties treat evidence admissibility and comity differently, and we clarify at this juncture. By saying that the documents are admissible into evidence, we make no determination of the truth of their contents. The truth of the contents goes to comity, discussed in detail below.

Plaintiff's primary contention is that the order from the Syrian court establishing that Taliaa was born in 1936 is not entitled to comity in this court. Plaintiff further contends that any documents flowing from that order are to be similarly disregarded. The Supreme Court, in Hilton v. Guyot, 159 U.S. 113 (1895), set forth the bounds for recognizing a foreign court's ruling, generally known as comity. Although it is "neither a matter of absolute obligation...nor of mere courtesy and good will" (*id.*, at 164-65), comity "is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens,

---

[5] The Syrian court order may or may not be admissible. If it is an administrative record analogous to a disability determination in the United States, for example, it may be admissible. If it is similar to another federal court opinion in the United States, those orders are generally inadmissible. Because there is sufficient evidence to defeat plaintiff's summary judgment motion without the actual order, we need not make an admissibility determination now.

or of other persons who are under the protection of its laws." *Id.*, at 165. And while the extension of comity is discretionary, domestic courts generally give effect to the formal acts of a foreign nation. <u>Biggelaar v. Wagner</u>, 978 F.Supp. 848, 858 (N.D.Ind.1997). Lower courts have read <u>Hilton</u> to require specific criteria for a finding of comity, including (1) opportunity for a full and fair trial; (2) trial before a court of competent jurisdiction; (3) proceedings following due citation or voluntary appearance of adversary parties; (4) a trial conducted upon regular proceedings; (5) a trial under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries; and (6) no evidence to demonstrate fraud in the procuring of the judgment, prejudice in the system of laws in which the court was sitting, or prejudice in the court. <u>Biggelaar</u>, 978 F.Supp. at 858-59; <u>Glaverbel Societe Anonyme v. Northlake Marketing & Supply Inc.</u>, 48 U.S.P.Q.2d 1344, 1346-47 (N.D.Ind.1998).

The question of comity often arises in the following situation: A foreign court makes a determination of the rights and responsibilities between two parties, one of whom is a United States citizen. The prevailing party then seeks to enforce that judgment in the United States, and invokes the doctrine of comity so that the domestic court will recognize the foreign judgment. The concept behind comity is that "once the parties have had an opportunity to present their cases fully and fairly before a court of competent jurisdiction, the results of the litigation process should be final." <u>Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV</u>, 347 F.3d 589, 594 (5th Cir.2003) (internal citations omitted).

Plaintiff focuses on the allegedly corrupt Syrian jurisprudential system to argue that the Syrian court's determination of Taliaa's birth date should not be granted comity. While such a concern may be valid, we see the crux of the dispute differently. As noted above, comity

generally applies where both parties were involved in the foreign dispute. Such is not the case here. It seems unfair to us, then, to bind the current plaintiff to facts determined by another court where the plaintiff had no opportunity to present conflicting evidence. In fact, it is unclear whether the Syrian court hearing was an adversarial proceeding at all. While affiant Yousif Abobaker asserts that the proceedings to correct an error on one's civil status record require the Secretary of Civil Records to appear as the defendant (defs' combined reply and response, exh. H, at ¶ 9), it is unclear whether any evidence or witnesses were heard as against Taliaa. If that is the case, we will not bind a non-party to the foreign proceeding to a fact determined on the basis of evidence presented only by the adversary (or those with the same interests as the adversary) in the domestic proceeding.

Rather than viewing this matter as one strictly of comity, we view it under the guise of issue preclusion, or collateral estoppel. Because a relevant fact was already determined in a court of law, we must look at a number of factors to determine the preclusive effect such factual findings will have in this court. The four requirements for preclusion of factual findings in foreign litigation include: (1) identical issues; (2) actual litigation of the issue; (3) the finding of the relevant fact was necessary to the foreign court's final decision; and (4) the foreign tribunal's proceedings were fundamentally fair. *See* Oneac Corp. V. Raychem Corp., 20 F.Supp.2d 1233, 1242-43 (N.D.Ill.1998) (citing Northlake Marketing & Supply Inc. v. Glaverbel S.A., 986 F.Supp. 471, 475-76 (N.D.Ill.1997), where the foreign litigation involved the same parties).

In this case, while the issue (Taliaa's birth date) is identical, and the finding of that fact was necessary to the Syrian court's determination, it is unclear whether the issue was actually litigated or that the Syrian proceedings were fundamentally fair. Further, the doctrine of

collateral estoppel (barring a party from relitigating an issue already determined by a court of competent jurisdiction) requires that the parties be identical in the two suits. *See, e.g.*, Leo Feist, Inc. v. Debmar Pub. Co., 232 F.Supp. 623 (E.D.Pa.1964). And such is not the case here. *But see* Foncette v. Bureau of Immigration Customs and Enforecement, 2007 WL 140993 (M.D.Pa.2007) (collaterally estopping defendant from relitigating the fact of plaintiff's mother's legal separation, already determined by a Trinidad court). Because plaintiff did not have an opportunity to weigh in on the debate in the Syrian hearing, it is therefore not bound by the foreign court judgment.

Just because plaintiff is not collaterally estopped from arguing Taliaa's birth date does not necessarily mean that it should be granted summary judgment. In fact, quite the opposite is true. As we noted above, the Syrian documents showing Taliaa's birth date as 1936 are admissible evidence in this case. So, however, are the immigration documents and defendants' sworn statements showing Taliaa's birth date to be 1926. Therefore, we are left with a material factual dispute that goes to the heart of the parties' controversy. Such a factual dispute precludes the finding of summary judgment for either party.

Defendants offer an alternative argument, wherein the factual determination of Taliaa's birth year is irrelevant. Specifically, defendants argue that plaintiff's claims are barred by the incontestability clause contained in the insurance contract. That provision reads: "We will not contest this policy after it has been in force during the lifetime of the Insured for two years from the Date of Issue. This provision will not apply to any provisions for waiver of premium or accidental death benefits." Plaintiff retorts that the misstatement of age or sex provision ("age adjustment" provision), also contained in the insurance contract, is independent from the incontestability provision, and adherence to that provision is not a contest of the contract's

validity. The age adjustment provision states: "If the age or sex of the Insured is misstated, our liability will be the amount of insurance which the premium paid would have purchased for the correct age and sex." Although the parties treat this dispute in a cursory manner, it is, in fact, dispositive.

Incontestability provisions are statutorily required in most states, including Illinois. *See, e.g.*, 215 ILCS § 5/224(1)(c) (requiring a "provision that the policy...shall constitute the entire contract between the parties and that after it has been in force during the lifetime of the insured a specified time, not later than 2 years from its date, it shall be incontestable except for nonpayment of premiums..."). Such provisions are designed to force an insurer to investigate any potential misstatements in the insurance application with reasonable promptness and prevent "an insurer from lulling the insured, by inaction, into fancied security during the time when the facts could best be ascertained and proved, only to litigate them belatedly, possibly after the death of the insured." 17 COUCH ON INS. 240:5 (2006). *See also* Hogan v. Paul Revere Life Ins. Co., 2003 WL 120957, *7 (N.D.Ill.2003). It is "settled that a principal effect of these clauses is to preclude the insurer from attempting to rescind the policy after the requisite contestability period has expired on the ground that the insured made misrepresentations in the application." Equitable Life Assur. Soc. of U.S. v. Bell, 27 F.3d 1274, 1278 (7th Cir.1994).

Plaintiff argues that application of the age adjustment provision is not barred by the incontestability provision because it is not a contest of the validity of the insurance contract, but instead a recognition of its terms. Plaintiff's underlying argument, that an incontestability clause does not alter the scope of coverage, is correct. The court in Carlson v. New York Life Ins. Co., explained:

> The incontestability clause may not be read as an 'insuring' or 'coverage' clause. This clause merely provides that after the elapsed period of time, the insurer may not urge the defense that the policy was invalid in its inception, or thereafter, by reason of a condition broken. Such a clause does not alter the scope of coverage of a policy.... The incontestability clause pertained to the truth of the representations made in the application for insurance, and had no relevancy to the determination of the question of coverage.

222 N.E.2d 363, 371 (Ill.App.Ct.1966). And although Illinois has not specifically looked at the relationship between an age adjustment provision and an incontestability provision, other states have done so. Some courts have agreed with plaintiff, finding that the application of an age adjustment provision is not a contest of the policy within an incontestability provision. *See* Equitable Life Assur. Soc. of the United States v. First Nat. Bank of Birmingham, 113 F.2d 272 (5th Cir.1940) (applying Alabama law); New York Life Ins. Co. v. Hollender, 237 P.2d 510 (Cal.1951); Home Life Ins. Co. of America v. Greenspan, 63 A.2d 72 (Pa.1949); New York Life Ins. Co. v. Veit, 62 N.E.2d 45 (N.Y.1945); Messina v. New York Life Ins. Co., 161 So. 462 (Miss.1935).[6] The facts in all of those cases, however, can be distinguished from the case at hand. Although each involved a situation where the age adjustment clause was invoked after the running of the contestability period, such invocations diminished the value of the insurance policy, but did not void them altogether. For example, in Hollender, the defendant incorrectly stated his age as 45 on his insurance application, when, in fact, he was 47 years old. The court held that the insurance company was permitted to change the face value of the policy from $5,000 to $4,632, the amount of insurance which the premiums paid would have purchased at 47 years of age at the time of defendant's original insurance application. The Hollender court explained:

---

[6] Although we agree with plaintiff that the weight of authority with respect to the relationship between age adjustment clauses and incontestability clauses generally favors plaintiff's position, those cases generally involve a reduction in the amount due to the beneficiaries, not a complete denial of benefits, as is the case here.

> It must be remembered that ordinarily the age of the applicant for insurance does not affect the acceptability of the risk, and admittedly plaintiff would have issued the policy as readily to defendant at age 47 as at age 45 years, with the age factor simply operating to fix the insurance premiums according to the established mortality tables. Accordingly, the age adjustment clause cannot be held to conflict with the incontestable clause but rather, as an independent provision of the insurance contract, it expresses the parties' agreement for the correction of errors consistent with their rights and obligations during the life of the policy.

237 P.2d at 82-83 (citing Langan, 130 S.W.2d at 481-83).

In this case, plaintiff seeks to award $0 to decedent's beneficiaries. Plaintiff suggests that an award of $0 is not a voiding of the policy, but simply an application of the age adjustment provision. We disagree, and view it as a challenge to the validity of the insurance contract. Taliaa applied for a life insurance policy that only covered specific ages. Assuming for the moment that Taliaa was indeed born in 1926, adjusting her age would take her outside the scope of the insurance policy altogether. Thus, plaintiff's invocation of the age adjustment clause is, in reality, a challenge to the validity of the policy due to a misstatement of the applicant. That is exactly what the incontestability provision is designed to prohibit.

As opposed to the cases cited by plaintiff, the facts of this case more closely parallel those of Estate of Daniel v. Ford Life Ins. Co., 270 So.2d 175 (La.1972). In Estate of Daniel, the decedent misrepresented his age as less than 65 years on an insurance application for a policy where the maximum age was 65. The policy included both age adjustment and incontestability provisions. The Louisiana court held that, notwithstanding the age adjustment provision, because the insured would not have been issued the policy had he given his correct age, the insurance company's defense was relating to the validity of the policy *ab initio*. Therefore, the court concluded that the invocation of the age adjustment provision was a defense precluded by the incontestability clause.

We find the Louisiana court's analysis persuasive. *See also* <u>Maxwell v. Cumberland Life Insurance Co.</u>, 748 P.2d 392 (Idaho 1987). Although plaintiff points us to a similar fact pattern with an opposite outcome in <u>Wall v. Diamond State Life Ins. Co.</u>, 175 S.E.2d 602 (N.C.App.Ct.1970), we think it can be distinguished from the case at hand. In <u>Wall</u>, the court found that repayment of premiums was sufficient wherein an insured misstated his age, and his correct age took him outside the acceptable bounds of the insurance policy. The age adjustment clause in <u>Wall</u> differed from the one at hand, as it included the following language:

> In the event the age of the Insured has been misstated and if, according to the correct age of the Insured, the coverage provided by the Policy would have become effective, or would have ceased prior to the acceptance of such premium or premiums, then the liability of the Company shall be limited to the refund, on request, of all premiums paid for the period not covered by the policy.

The Amica policy at issue included no such language.

We are further supported by the Seventh Circuit's indication that an incontestability clause is "'in the nature of a statute of limitation and repose,' obliging the insurer to investigate the insured's medical history promptly else it become bound by representations contained on the insured's application." <u>Bell</u>, 27 F.3d at 1278 (internal citations omitted). A statute of limitations is designed to "'promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared'" <u>In re Copper Antitrust Litigation</u>, 436 F.3d 782, 796 (7th Cir.2006) (quoting <u>Order of R.R. Tel. v. Ry. Express Agency, Inc.</u>, 321 U.S. 342, 348-49 (1944)), and we see no reason to treat misrepresentations of age differently from misrepresentations of health in this context, especially where both would take the insured

outside of coverage completely.[7]

## CONCLUSION

For the reasons stated herein, we grant in part plaintiff's motion to strike, deny plaintiff's motion for summary judgment, and grant defendants' motion for summary judgment. Plaintiff is directed to pay the proceeds of Taliaa's life insurance policy to the intended beneficiaries. Defendants' cross-claim for bad faith remains pending.

JAMES B. MORAN
Senior Judge, U. S. District Court

March 23, 2006.

---

[7] We do not mean to suggest that abstract justice is necessarily served by plaintiff's recovery. Indeed, we are given no reason why the insured's mother is listed as dying in 1929 on a 1997 visa application and, later, the insured has a 1936 birth date. But as Bell indicates, the legislative determination is that mistakes, inadvertent or intentional, should be corrected sooner rather than later.